[Cite as *State v. Jones*, 2022-Ohio-2089.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO.  1-21-61

      v.

PRENTICE JONES,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 21CRB02182

Judgment Affirmed

Date of Decision:  June 21, 2022

APPEARANCES:

    *F. Stephen Chamberlain* for Appellant

    *David Osborne, Jr.* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Prentice Jones ("Jones"), brings this appeal from the December 10, 2021, judgment of the Lima Municipal Court sentencing Jones to 180 days in jail, with 135 suspended, after Jones was convicted in a bench trial of domestic violence in violation of R.C. 2919.25(A), a first degree misdemeanor. On appeal, Jones argues that there was insufficient evidence presented to convict him, and that his conviction was against the manifest weight of the evidence.

*Background*

{¶2} On November 11, 2021, Jones was living at the Travelodge in Lima with his girlfriend, T.S. While T.S. was sleeping, Jones struck her in the foot, causing her pain. When she awakened, T.S. was angry and the two argued. The police were eventually called and Jones was arrested.

{¶3} Jones was charged in trial court case 21CRB02182(A) with domestic violence in violation of R.C. 2919.25(A), a first degree misdemeanor, and in trial court case 21CRB02182(B) with assault in violation of R.C. 2903.13(A), a first degree misdemeanor.

{¶4} Jones was released from jail a couple of days after the incident and he went right back to the Travelodge to stay with T.S. despite a no contact order being in place. Jones and T.S. were together over the weekend, but on November 14, 2021, T.S. called the police, making numerous accusations against Jones. Those

accusations led to Jones being charged in trial court case 21CRB02198 with numerous other criminal offenses.[1]

**{¶5}** Jones pled not guilty to the charges in both trial court cases and he proceeded to a bench trial on December 9, 2021. Ultimately Jones was convicted in 21CRB021282(A) of domestic violence; however, he was acquitted of all other charges against him in both cases.

**{¶6}** The case proceeded directly to sentencing with Jones being ordered to serve 180 days in jail, with 135 suspended. A judgment entry memorializing Jones's sentence was filed December 10, 2021. It is from this judgment that Jones appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in denying defendant/appellant's motion for acquittal and the evidence was insufficient to support the conviction of defendant/appellant for the crime of domestic violence in violation of [the] Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.**

**Assignment of Error No. 2**
**The Court's verdict finding defendant/appellant, guilty beyond a reasonable doubt of the crime of domestic violence is against the manifest weight of the evidence in violation of [the] Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.**

---

[1] As Jones was acquitted of all charges in trial court case 21CRB02198, we will not discuss those charges.

Case No. 1-21-61

*First Assignment of Error*

**{¶7}** In his first assignment of error, Jones argues that there was insufficient evidence presented to convict him.

Standard of Review

**{¶8}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 6. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Authority

**{¶9}** In this case, Jones was convicted of domestic violence in violation of R.C. 2919.25(A), which reads, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶10} As relevant to this case, "physical harm to persons" is defined in R.C. 2901.01(A)(3) as, "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

### Evidence Presented by the State

{¶11} T.S. and Jones started a romantic relationship in June of 2021. At the beginning of their relationship, the couple lived with T.S.'s mother; however, T.S.'s mother, Jacqueline, was already caring for five of T.S.'s children in the home and Jacqueline did not want T.S. and a "complete stranger" living in her home, so Jacqueline had them evicted.

{¶12} T.S. and Jones then began staying at the Travelodge motel in Lima. T.S. had a number of health issues including liver failure, chronic pancreatitis, anemia, diabetes, and chronic neuropathy. T.S. testified that while she and Jones were living at the Travelodge, on November 11, 2021, she was asleep and Jones slapped her foot, "hard," causing her foot pain. (Tr. at 20). T.S. specifically testified, "I mean it wasn't a—a light slap. It was a hard slap." (*Id*. at 11). T.S. indicated that she took medication for the pain in her feet already, "the max dose, three times a day[.]" (*Id*. at 22).

{¶13} T.S. was "upset" at being awakened and, due to the slap and the "nature of the way" Jones was talking to her, T.S. "got scared," so she called the police. (*Id.* a 9, 20).[2]

{¶14} Jones was convicted of domestic violence for slapping T.S.'s foot.

Analysis

{¶15} In arguing that the State presented insufficient evidence to convict Jones of domestic violence, Jones contends that the State did not establish that "harm" was caused that would meet the statutory definition when Jones slapped T.S.'s foot. Further, he argues that to the extent any "harm" was caused, the State did not establish that it was caused by Jones rather than T.S.'s medical conditions.

{¶16} Contrary to Jones's argument, T.S. did testify to each element of the crime of domestic violence. She testified that she lived with Jones at the Travelodge, that Jones struck her foot "hard," and that the strike caused her pain.

{¶17} Importantly, physical harm to persons consists of "*any injury * * * regardless of its gravity or duration*." (Emphasis added.) R.C. 2901.01(A)(3). Physical harm "does not require evidence of visible injuries." *State v. Boldin*, 11th Dist. Geauga No. 2007-G-2808, 2008-Ohio-6408, ¶ 40.

{¶18} Given that T.S. specifically testified that the slap caused her pain, we cannot determine that the State presented insufficient evidence to support Jones's

---

[2] The remaining witnesses for the State testified primarily regarding the November 14, 2021, incident and that testimony is not relevant to this appeal.

conviction for Domestic Violence. *See State v. Wyland*, 8th Dist. Cuyahoga No. 94463, 2011-Ohio-455 (upholding assault conviction where physical harm was caused by kick that merely grazed a shin, but reversing an assault conviction where no physical harm was testified to by being spit upon). For these reasons, Jones's first assignment of error is overruled.

*Second Assignment of Error*

{¶19} In his second assignment of error, Jones argues that even if there was sufficient evidence presented to convict him, his conviction was against the manifest weight of the evidence.

Standard of Review

{¶20} In reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*.

{¶21} Nevertheless, a reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State*

*v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### Testimony Presented by the Defense

**{¶22}** Regarding the November 11, 2021 incident, Jones testified that he went to work on the day in question and missed multiple calls from T.S. When he was on break he called her back and learned that T.S. was sick and that the building was being "evacuated" due to fire alarms. (Tr. at 79). Jones was given permission to leave work early and he went to the Travelodge.

**{¶23}** When he arrived, T.S. was "half asleep," but she indicated that the Travelodge had let them back inside. (*Id*. at 80). Jones testified that he was hungry since he skipped lunch at work in order to come home, prompting him to start looking for the forks. When he did not find the forks, he asked T.S. about them but she did not answer. Jones testified that he then "tapped" T.S.'s foot.

**{¶24}** According to Jones, T.S. was very angry at being awakened and an argument ensued. Jones testified that T.S. was intoxicated and she tried to leave with a bottle of alcohol in her bag. Jones testified that he stopped T.S. from driving away while intoxicated, but then T.S. called the police and he was arrested.

{¶25} Jones's mother testified as well, indicating that T.S. had texted her after the incident in question, claiming that Jones had just "hit her to wake [her] up." (Tr. at 102, 104).

Analysis

{¶26} Through Jones's testimony, and the testimony of his mother, it became clear that Jones did, in fact, strike T.S.'s foot. Jones also acknowledged that he was living at the Travelodge. Thus the only real question remaining was whether the trial court's determination that Jones knowingly caused physical harm to T.S. was against the manifest weight of the evidence.

{¶27} We note that Jones was aware that T.S. had various ailments, yet he struck her foot anyway. Regardless, the trial court, acting as trier-of-fact, was free to disbelieve Jones's claim that he merely "tapped" T.S.'s foot, particularly given that T.S. apparently sent a text message to Jones's mother shortly after the incident indicating that Jones had "hit" her.

{¶28} A reviewing court must allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). The trier-of-fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24. The trier-of-fact may take note of any

inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶29} Here, the trial judge believed T.S.'s story and her claim that she was harmed by Jones's actions and we will not second-guess the trial court's judgment. Moreover, when the trial court conducted its analysis on the record to render its decision with regard to the various charges, the trial court established that it was discerning and paying particular attention to the details. The trial court acquitted Jones of other domestic violence/assault charges at the trial, noting that things like "grabbing someone's shoulder" while impolite, was not automatically domestic violence unless there was harm or injury. (Tr. at 116). The trial court thus distinguished the incident wherein T.S. testified to pain after the foot slap from the other incidents wherein there was physical contact between T.S. and Jones but T.S. did not identify any pain or other harm.

{¶30} We note that some appellate cases have held that certain instances of knowing physical contact do not satisfy "physical harm to persons" unless there is specific testimony regarding an injury. For example, "pushing" someone may constitute *force* for a robbery but it does not necessarily satisfy the element of causing *physical harm*. *See State v. Davis*, 8th Dist. Cuyahoga No. 91943, 2009-Ohio-3894, ¶ 38. Similarly it has been determined that the act of pushing a stroller

over a person's toes does not meet the definition of an "injury" for a robbery, although it may have been force. *See State v. Frunza*, 8th Dist. Cuyahoga No. 82053, 2003-Ohio-4809.

**{¶31}** However, unlike those cases, we have specific testimony that the "hard" slap caused T.S. pain. Given that the definition for physical harm to persons indicates "*any injury*" regardless of gravity or duration, we cannot find that Jones's conviction was against the manifest weight of the evidence. Therefore his second assignment of error is overruled.

*Conclusion*

**{¶32}** For the foregoing reasons, Jones's assignments of error are overruled and the judgment of the Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**