DECISION AND JUDGMENT ENTRY
{¶ 1} John Higginbotham appeals the trial court's decision adjudicating him a delinquent child as a result of committing gross sexual imposition in violation of R.C. 2152.02(F)(1) and R.C. 2907.05(A). Higginbotham contends that the court's decision is against the manifest weight of the evidence as the State failed to introduce compelling evidence that he had impermissible sexual contact with a five year old boy. He also argues that the State failed to prove that he touched the victim with the purpose of sexual arousal or gratification. After careful review of the record, we conclude that the trial court did not create a manifest miscarriage of justice when it adjudicated Higginbotham a delinquent child because two witnesses observed him with the boy, he admitted molesting a five year old boy to residents of the group home where he was held pending adjudication, and he admitted to the investigating police officer that he inappropriately touched and kissed the boy. We also conclude that a reasonable person may properly infer that Higginbotham's purpose in placing his mouth on the boy's mouth, chest, and penis was for sexual gratification or arousal. Therefore, we overrule Higginbotham's sole assignment of error and affirm the trial court's judgment.
 {¶ 2} In February 2004, the State filed a complaint alleging that Higginbotham was a delinquent child because he had sexual contact with M.F., a child less than thirteen years of age, by kissing him on the lips, chest, and penis in violation of R.C.2152.02(F)(1) and 2907.05. Following an adjudicatory hearing, the Juvenile Division of the Lawrence County Court of Common Pleas found Higginbotham to be a delinquent child and committed him to the Department of Youth Services.
 {¶ 3} Higginbotham filed a timely appeal, assigning the following error: "The trial court committed reversible error by finding that the appellant was delinquent by reason of gross sexual imposition since such was against the manifest weight of the evidence."
 {¶ 4} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act which would have constituted a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E). Accordingly, in the juvenile context we employ the same standard of review applicable to criminal convictions claimed to be against the manifest weight of the evidence. See In re Watson
(1989), 47 Ohio St.3d 86, 91, 548 N.E.2d 210.
 {¶ 5} Our role in a manifest weight of the evidence inquiry is to determine whether the evidence produced at trial "attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180,193, 702 N.E.2d 866. This is essentially a question of rational persuasiveness. To make this determination, we must "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted."State v. Stepp (1997), 117 Ohio App.3d 561, 567,690 N.E.2d 1342. If the record contains substantial evidence upon which a trier of fact could conclude that the State proved its case beyond a reasonable doubt, we will not reverse a conviction.Getsy, 84 Ohio St.3d at 193-194; State v. Eskridge (1988),38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.
 {¶ 6} R.C. 2907.05(A)(4) states that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 7} At the adjudicatory hearing, the State established that M.F., who was five years old, was playing in Chesapeake Park near his home. At approximately 5:30 p.m., M.F.'s mother called for him to come inside for dinner and he eventually complied. About fifteen minutes later, a police officer arrived at M.F.'s home and informed his mother that a boy with a prior history of child molestation had been seen in the park with M.F. Upon hearing this information, M.F. began to cry, grabbed his father's hand, took him out of the room, and spoke to him. As a result of this conversation, M.F.'s parents took him to St. Mary's Hospital where he was examined and received counseling.
 {¶ 8} Both M.F.'s mother and Don Mullins, Jr., who arrived at the park with his daughter sometime between 5:30 and 6:00 p.m., observed Higginbotham in a treehouse with M.F.
 {¶ 9} Raymond Lawrence and Cory Lunsford, two juveniles who were residents of the Lawrence County Boll Group and Shelter Home while Higginbotham was held there pending adjudication, testified that Higginbotham admitted molesting a five year old boy. Lawrence testified that Higginbotham told him he either "raped or sexually molested a five year old boy," but could not recall Higginbotham's exact words. Lawrence stated that Higginbotham told him he kissed the boy on the mouth, on the chest and on the stomach, and then he took the boy's penis and put it in his mouth. Lawrence admitted that Higginbotham did not mention the boy's name or say where this event happened, but stated that Higginbotham told him it was recent. Lunsford testified that Higginbotham admitted several times that he molested a five year old, stating that he kissed him on the lips, the chest, the stomach, and on his "private part." Lunsford acknowledged that Higginbotham never said when these acts occurred.
 {¶ 10} Officer David Adkins testified that he is employed by the Chesapeake Police Department and that he spoke to M.F. about the events in the park. Following this conversation, Officer Adkins talked to Higginbotham and his mother. Upon questioning, Higginbotham said that he "may have touched [M.F.] when he came up the slide to play," but that M.F. already had his pants down. Officer Adkins testified that Higginbotham gave a written statement, which indicated that M.F. asked to play with him and that they "were [sic] hit each other and I might of [sic] hit him [sic] butt and his pevie [sic]." Officer Adkins stated that Higginbotham stated that he meant "penis" when he wrote "pevie." Officer Adkins testified that Higginbotham admitted playing with M.F. in a way they shouldn't have been playing, and stated that they touched and kissed each other. Officer Adkins acknowledged that several of the statements he attributed to Higginbotham were not included in his report.
 {¶ 11} M.F. did not testify at the hearing and his statements to his parents and to the police were not admitted into evidence.
 {¶ 12} Higginbotham argues that his conviction is against the manifest weight of the evidence because the State failed to produce a witness who could specifically attest to the events that transpired between him and M.F. Higginbotham contends that M.F.'s mother testified that he behaved normally when he returned from the park and Mullins, who observed some interaction between Higginbotham and M.F., testified that M.F. behaved normally and did not appear afraid of Higginbotham. Higginbotham argues that this testimony belies the State's claim that he molested M.F. Higginbotham further contends that the court should not have relied solely on the testimony of two juvenile delinquents and on an officer who failed to include key details in his report in adjudicating him a delinquent.
 {¶ 13} We agree with Higginbotham that this is not the most compelling case we have reviewed. Nonetheless, we recognize the difficulties prosecutors face in attempting to prove sexual abuse allegations involving young children who cannot or will not testify for one reason or another. Having carefully reviewed the entire record, we cannot conclude that the trial court clearly lost its way and created a manifest miscarriage of justice by adjudicating Higginbotham a delinquent child.
 {¶ 14} There is no dispute that Higginbotham and M.F. were together at the park. Moreover, the trial court, as the finder of fact, was free to credit the testimony of Lawrence and Lunsford who stated that Higginbotham repeatedly admitted molesting a five year old, including placing his penis in his mouth. Although both witnesses admitted that Higginbotham never indicated when or where these events occurred, Lawrence testified that Higginbotham made these admissions in response to his question as to why Higginbotham was in the group home and indicated that the events occurred recently. Therefore, it is logical that Higginbotham was referring to M.F. when he described the five year old boy. Additionally, Higginbotham admitted to Officer Adkins that he had played with M.F. in an inappropriate manner and that they touched and kissed one another.
 {¶ 15} While M.F.'s apparent lack of distress immediately following the incident may be relevant, we disregard the weight Higginbotham places on this evidence. M.F. may not have understood the severity of Higginbotham's actions at the time or may have been dealing with his emotions by suppressing them. Moreover, M.F.'s mother testified that his behavior changed after the incident. She testified that M.F. no longer likes to be around older children in the family and that he displays a lot of anger.
 {¶ 16} Finally, Higginbotham contends that the State failed to prove that he touched M.F. with the specific intent of sexually or gratifying himself or M.F. He contends that the State introduced no evidence whatsoever of his motivation and, therefore, the court's finding of delinquency must be reversed.
 {¶ 17} Higginbotham correctly states that his conduct qualifies as impermissible "sexual contact" only if the touching was for the purpose of sexual arousal or gratification. R.C.2907.05(A)(4); R.C. 2907.01(B). However, we disagree with Higginbotham's claim that there is insufficient evidence to support the court's delinquency finding.
 {¶ 18} Proof of sexual gratification generally must be accomplished by inference rather than by direct evidence. SeeState v. Cobb (1991), 81 Ohio App.3d 179, 185, 610 N.E.2d 1009,1012. In Cobb, the court noted that: "[T]he proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts the trier of fact may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines, that the defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved." Id. See, also, In reAnderson (1996), 116 Ohio App.3d 441, 688 N.E.2d 545; In reSalyers (June 10, 1998), Ross App. Nos. 97CA2312 and 2319; Inre Bloxson (Feb. 6, 1998), Geauga App. No. 97-G-2062 (stating that "[a] sexual purpose can be inferred from the nature of the act itself if a reasonable person would find that act sexually stimulating to either the offender or the victim").
 {¶ 19} In State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359, the court discussed the motivation of one accused of gross sexual imposition: "Concerning the motivation of one accused of gross sexual imposition, we have stated that whether the touching at issue was `undertaken for the purpose of sexual arousal or gratification must be inferred from the type, nature, and circumstances surrounding the contact.' State v. Mundy
(1994), 99 Ohio App.3d 275, 289, 650 N.E.2d 502. In doing so, we consider whether `an ordinary prudent person or a reasonable person sitting as a juror [would] perceive from the defendant'sactions, and all of the surrounding facts and circumstances, that the defendant's purpose or specific intention was arousal or gratification of sexual desire.'" Id.
 {¶ 20} Although there is no direct evidence of Higginbotham's sexual motivation, sufficient evidence exists from which the trial court reasonably could have inferred that he committed the acts for purposes of sexual arousal. A reasonable person could conclude that Higginbotham's placement of his mouth on the five year old's mouth, chest, and penis constituted contact for purposes of sexual gratification or arousal as there is no innocent explanation for this behavior.
 {¶ 21} Having found no merit in Higginbotham's sole assignment of error, we affirm the judgment of the trial court.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Probate-Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.