[Cite as *State v. Vanpernis*, 2025-Ohio-365.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 24CA9 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| v. | : | |
| Randall W. Vanpernis, | : | |
| Defendant-Appellant. | : | **RELEASED 2/03/2025** |

_____

<u>APPEARANCES</u>:

Stephen E. Palmer, Palmer Legal Defense, Columbus, Ohio, for appellant.

Brigham M. Anderson, Lawrence County Prosecuting Attorney, and Andrea M. Kratzenberg, Lawrence County Assistant Prosecuting Attorney, Ironton, Ohio, for appellee.
_____

Hess, J.

{¶1}     Randall W. Vanpernis appeals the judgment of the Lawrence County Court of Common Pleas denying his petition for postconviction relief without a hearing following his convictions on two counts of gross sexual imposition.  He raises two assignments of error. First, he contends that the trial court applied the incorrect legal standard of review when it denied his petition without conducting a hearing under R.C. 2953.21(D). Second, he contends that the trial court erred when it denied his petition on the merits without a hearing.

{¶2}     We find that the trial court applied the correct standard of review when it analyzed Vanpernis's petition. The trial court determined that there were no substantive grounds for relief for an ineffective assistance of counsel claim by considering the entirety

of the record from the trial court proceedings, as well as the parties' postconviction submissions, and found that the record on its face disproved his claim. The trial court determined that the record demonstrated that Vanpernis could show no prejudice from the alleged deficiencies of counsel. The trial court did not require Vanpernis to "definitively" establish prejudice. Vanpernis's claim of ineffective assistance did not depend on the factual allegations made outside the record by his expert witnesses concerning his interview with law enforcement. Rather, it was disproved by the factfinder's[1] specific statement that it was the credibility of the victim's in court testimony and lack of credibility of Vanpernis's in court denials that supported the factfinder's guilty verdicts. The law enforcement interview played little to no role in the verdict and was not identified as persuasive evidence in the factfinder's written decision rendering guilty verdicts.

**{¶3}** We also find that the trial court did not abuse its discretion when it dismissed Vanpernis's petition without a hearing. Competent and credible evidence supports the trial court's findings. We overrule the assignments of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL HISTORY[2]

**{¶4}** The Lawrence County grand jury indicted Vanpernis on two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), a third-degree felony. He pleaded not guilty, waived a jury trial, and the matter proceeded with a bench trial.

---

[1] To avoid confusion, when appropriate we refer to the trial court that reviewed his petition for postconviction relief as the "trial court" and the trial court that served as the factfinder in his underlying criminal bench trial as the "factfinder."

[2] The facts and procedural history come, in part, from our prior decision in Vanpernis's direct appeal. *State v. Vanpernis*, 2022-Ohio-4563, ¶ 2-6 (4th Dist.).

**{¶5}** The victim's mother testified that in mid-December 2020, she became aware through conversations with neighbors that Vanpernis may have been engaged in inappropriate sexual activity with the victim, 11-year-old O.B. Law enforcement officials were notified.

**{¶6}** Detective Sergeant Bollinger and Sergeant Chaffins conducted a video and audiotaped interview of Vanpernis and it was introduced at trial. Initially, Vanpernis admitted to "cuddling on the couch" with O.B. Then Vanpernis stated that O.B. physically grabbed his penis while they were watching a movie, and he pushed her off him and told her to leave him alone.  Vanpernis also stated that O.B. would be "rubbing around on me big time" but he denied putting his hands in her pants. He denied touching O.B.'s vagina skin-to-skin and stated that he did not touch it "with intention."  Vanpernis stated that O.B. would stretch up, cuddle up, and try "to get my hand on her where she wants it." He admitted that O.B. was rubbing her vagina on his hand, but it was not skin-to-skin. When asked, "So when you told [Detective Bollinger] about how, about how the most you'd ever rubbed it [O.B.'s vagina] thru her clothes was for about a second or two, is that the truth?" Vanpernis responded, "The whole truth." Later in the interview, Detective Bollinger states, "Okay, but you're bullshitting us. You're not tell us * * * everything that happened with [O.B.]." Vanpernis responded, "I told you I rubbed her."  Vanpernis stated that he rubbed O.B.'s vagina over her pajama shorts for "about a half of a second. And that's as far as I ever went." Vanpernis also admitted that O.B.'s pajama shorts were short and he was rubbing skin-to-skin on her leg. Finally, Vanpernis admitted to rubbing O.B.'s vagina:

Bollinger: How many times did you rub her bare vagina?

Vanpernis: One time, not with my bare hands.

Bollinger: No, don't tell me, you know that that's bad.

Vanpernis: I should have waited until you finished your question.

Bollinger: Yeah, but, no, you did rub her bare vagina. But was it only once, or was it a bunch of times?

Vanpernis: There was not much [sic] of times, no.

Bollinger: One time?

Vanpernis: One time, yeah.

{¶7} O.B. testified that Vanpernis taught her how to search for pornography on the Internet and that he touched her inappropriately. She testified that Vanpernis touched her vagina with his hand and that this touching occurred on multiple occasions on the living room couch, her room, and his room. She testified that Vanpernis touched her vagina with his hand inside her pajamas. O.B. also testified that Vanpernis would force her to touch his penis with her hand and move it back and forth, which was something that she watched happen in videos.

{¶8} At the close of the State's case, Vanpernis made a Crim.R. 29(A) motion for a judgment of acquittal, which the trial court denied. Vanpernis testified in his own defense and denied that he ever touched O.B. inappropriately. The judge found him guilty as charged. The trial court sentenced him to a consecutive total of 108 months in prison and ordered him to register as a Tier II Sexual Offender.

{¶9} On appeal, Vanpernis raised one assignment of error contending that there was insufficient evidence to support the "sexual conduct" element of the crime, which we rejected and affirmed his conviction. *State v. Vanpernis*, 2022-Ohio-4563 (4th Dist.).

{¶10} Vanpernis filed a timely petition for postconviction relief in which he contended he had ineffective assistance of trial counsel and raised two separate grounds

for relief. He argued that his trial counsel was ineffective because counsel did not file a motion to suppress challenging the admissibility of his statements to law enforcement. He argued that the interrogation techniques used by law enforcement resulted in an involuntary confession and his trial counsel's decision not to file a motion to suppress fell below the normal and reasonable standards of practice. Vanpernis also contended that his trial counsel was ineffective for failing to retain experts to support a motion to suppress. Vanpernis argued that his statements during the interview "were critical to the case and formed the basis for his convictions."

**{¶11}** The State asked the trial court to dismiss the petition without a hearing because Vanpernis failed to present substantial grounds for relief. It argued that Vanpernis failed to present allegations sufficient to state a constitutional claim of ineffective assistance of counsel because the decision about whether to hire an expert is within the sound discretion of trial counsel and constitutes a trial tactic and strategy. The State argued that rather than retain an expert on "forensic interviewing and the potential for 'false confessions,' " Vanpernis's trial counsel's strategy was "to directly attack the investigating officers' treatment of the defendant on cross examination." In sum, the State argued, "[t]hat counsel chose to address the topic on cross exam instead of retaining some 'expert' does not amount to a deprivation of rights to the defendant. It was a strategic determination and should be regarded as such."

**{¶12}** The trial court dismissed Vanpernis's petition without a hearing.

The Court does not find the defendant's petition on its face to raise claims that his convictions are void or voidable on constitutional grounds that depend on factual allegations that cannot be determined by examination of the files and records of the case. In this specific case, the record, on its face, disproves the petitioner's claim.

Specifically, the trial court reviewed the evidence on the record and found that the factfinder explicitly identified which evidence was credible and supported a guilty verdict on both counts. Quoting portions of the factfinder's decision, the trial court found that the factfinder did not identify law enforcement's interview of Vanpernis among the evidence supporting the verdicts:

> "The testimony offered during trial was the testimony of Barbara Truitt, Investigator Chaffins, Detective Bollinger, the alleged child victim, and the defendant. As the trier of fact, the court is entitled to believe all, parts, or none of the testimony of the witnesses. The court had the opportunity to view each witness and observe his or her demeanor, gestures, and voice inflections. The court used these observations in weighing the credibility of the testimony of each witness that offered testimony in this case. Specifically, the court finds parts, but not all, of the entirety of the testimony of the alleged child victim and the testimony of the defendant to be credible. **However, the credible testimony of the alleged child victim, <u>and the other credible testimony adduced at trial</u> does support the court's finding and decision**." (*emphasis added* [by the trial court to the factfinder's decision]).

The trial court also found that the child victim's testimony "provided details at trial which were not addressed as part of the police interrogation and that "[i]rrespective of the police interrogation, the court found portions of the testimony of the child and the defendant to be credible." The trial court found that the factfinder did not identify Vanpernis's interview with law enforcement as evidence used to support the verdict. Therefore, even if the evidence presented in the petition were believed, the petition does not present substantive grounds for relief because it fails to show prejudice. The victim's testimony was credible and sufficient to support the guilty verdicts.

## II. ASSIGNMENTS OF ERROR

{¶13} Vanpernis presents two assignments of error:

1. The trial court abused its discretion, applied incorrect legal standards, and erroneously denied Vanpernis's Petition for Post-Conviction Relief

without conducting a hearing in violation of R.C 2953.21(D) and Due Process of Law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

2. The trial court errored [sic] by denying Vanpernis's Petition for Post-Conviction Relief on the merits without a hearing, thereby depriving him of his Right to Due Process of Law and his Right to Effective Assistance of Counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution.

## III.  LAW AND ANALYSIS

### A. Legal Standard of Review for Postconviction Petitions

**{¶14}** In his first assignment of error, Vanpernis argues that the trial court misapplied the standard for reviewing a postconviction relief petition as established by the Supreme Court of Ohio in *State v. Bunch*, 2022-Ohio-4723. "We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard." *State v. Hatton,* 2022-Ohio-3991, ¶ 38. However, whether a trial court has used the proper legal standard of review is a question of law, which we review de novo. *Id.* ("We review a decision to grant or deny a petition for postconviction relief . . . under an abuse-of-discretion standard. But whether a trial court has subject-matter jurisdiction to entertain an untimely, second, or successive petition for postconviction relief is a question of law, which we review de novo."); *Brand v. Ogle,* 2020-Ohio-3219, ¶ 9 (4th Dist.) ("The issue whether the trial court applied the correct legal standard is a question of law we review de novo.").

**{¶15}** The legal standard that applies to a petition for postconviction relief requires a trial court to review the entirety of the record as well as the evidence filed by the parties in the postconviction proceedings. If the record shows that the petitioner is not entitled to

relief, the petition is dismissed. If the record does not disprove the petition's claim, then the trial court must proceed to a hearing on the petition under R.C. 2953.21(F).

> In order to grant a hearing on a timely postconviction petition, the trial court must "determine whether there are substantive grounds for relief." R.C. 2953.21(D). If the petition "is sufficient on its face to raise an issue that the petitioner's conviction is void or voidable on constitutional grounds, and the claim is one which depends upon factual allegations that cannot be determined by examination of the files and records of the case, the petition states a substantive ground for relief."

> In determining whether the petition states a substantive ground for relief, the trial court must consider the entirety of the record from the trial proceedings as well as any evidence filed by the parties in postconviction proceedings. If the record on its face demonstrates that the petitioner is not entitled to relief, then the trial court must dismiss the petition. If the record does not on its face disprove the petitioner's claim, then the court is required to "proceed to a prompt hearing on the issues."

(Citations omitted.) *State v. Bunch*, 2022-Ohio-4723, ¶ 23-24.

**{¶16}** Vanpernis contended that his substantive ground for relief was a claim for ineffective assistance of trial counsel.

> To establish that trial counsel was ineffective, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defendant. Regarding the prejudice prong, the defendant must prove that there is a "reasonable probability" that counsel's deficiency affected the outcome of the defendant's proceedings. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."

(Citations omitted). *Bunch* at ¶ 26. Therefore, in determining whether the petition states a substantive claim of ineffective assistance of trial counsel, the trial court must consider the entirety of the record and must dismiss the petition if the record on its face demonstrates that counsel's performance was not deficient or, if deficient, did not result in prejudice.

**{¶17}** At this stage of the proceeding where the trial court is determining whether to grant a hearing on the petition, the petitioner is not required to "definitively" establish either of the two prongs of the ineffective assistance of counsel claim. *Bunch* at ¶ 27. "[T]o merit a hearing on a postconviction ineffective assistance claim, a petitioner must proffer evidence outside the record that if true, would show that counsel was ineffective." *Id.*

**{¶18}** Vanpernis offered the opinions of two persons he asserts were interrogation and psychological experts that, if permitted to testify in court under Evid.R. 702, would have provided information helpful to a motion to suppress Vanpernis's statements during the law enforcement interview. The interrogation expert, Brian Leslie, provided an affidavit in which he averred he would have assisted trial counsel with a suppression motion and/or cross examination and would have discussed the Reid interrogation technique, the use of the Reid technique during Vanpernis's interview, and how the technique could result in involuntary and unreliable statements. The psychological expert, John Tilley, provided a psychological report, but did not submit affidavit testimony. In his report he stated that he would have noted certain psychological variables that might have impacted Vanpernis's interaction with law enforcement. He opined that Vanpernis is a highly compliant individual with attention deficient disorder, which enhances his likelihood of making false statements to law enforcement.

**{¶19}** Vanpernis contends that the trial court applied the wrong standard because it reviewed the evidence the factfinder identified as the evidence supporting its guilty verdicts. He argues that he might not have even had a bench trial if his trial attorney had retained experts. He might have decided to have his case tried by a jury. However, this argument is entirely speculative. Vanpernis did not challenge or otherwise raise his

decision to waive a jury trial in his postconviction petition. He cites no case law for his proposition that the trial court's review of his petition must be performed on a hypothetical alternative record where the case is tried to a jury rather than judge. Additionally, there is no basis to believe that a jury trial would have resulted in a different outcome. The trial court did not use the incorrect standard when it reviewed the actual record in this case, which included a bench trial.

{¶20} Vanpernis also contends that the trial court oversimplified that case by focusing on the evidence the factfinder expressly stated supported the guilty verdicts: the victim's in court testimony and Vanpernis's in court denials of wrongdoing.  He contends that even if the trial judge disregarded and did not consider Vanpernis's recorded interview with law enforcement, his petition presented sufficient evidence that, if believed, warranted a hearing.  In other words, Vanpernis contends that his law enforcement interview could have been entirely disregarded by the factfinder and his petition would still have warranted a hearing.

{¶21} Vanpernis's argument ignores an important and separate component of the standard of review – the trial court's review of the record. Instead, he reiterates that he believes his petition on its face raised viable claims of ineffective assistance of counsel and that it relied on facts that cannot be determined from the record because it includes expert opinions that were not part of the record. He ignores that in determining whether the petition has raised on its face a viable claim of ineffective assistance of counsel, the trial court must review the entirety of the record from the trial court proceedings. If the record on its face demonstrates that he is not entitled to relief – if it disproves his claim of

ineffective assistance of counsel – either of the two prongs – the court must dismiss the petition.

{¶22} Here the trial court applied the correct standard of review. It reviewed Vanpernis's petition, it reviewed the record, and it determined that because Vanpernis's interview with law enforcement was not identified by the factfinder as evidence that supported the guilty verdict, then the interview had no persuasive value to the factfinder and any efforts to suppress or undermine it with experts would have had no impact on the outcome. Thus, even if everything stated in the petition were believed, it would have no impact on the guilty verdicts because the factfinder based its verdicts on the victim's credible testimony and Vanpernis's lack of credibility on the stand.

{¶23} The trial court did not apply an incorrect standard of review. It did not improperly require Vanpernis to "definitively" establish his trial counsel's deficiency or to "definitively" establish prejudice at this stage of the proceeding. *Bunch* at ¶ 27. Rather, it determined whether there were substantive grounds for relief by considering the entirety of the record from the trial proceedings and the evidence submitted by the parties and found that the record, on its face, demonstrated that Vanpernis was not entitled to relief because the law enforcement interview was irrelevant to the guilty verdicts.

{¶24} Vanpernis contends that it "defies reasoning to suggest" his "incriminating statements did not impact the outcome of the case." However, he ignores the entirety of the record. The 11-year-old victim came into court, took the witness stand, and testified that Vanpernis taught her how to search for pornography on the internet, forced her to touch his penis, and touched her vagina with his hand under her pajamas on multiple occasions while the two were cuddling or watching videos. The factfinder observed her

demeanor, gestures, and voice inflections. It used these observations in weighing the credibility of her testimony and based its guilty verdict on her testimony as well as Vanpernis's in court testimony denying it all. The factfinder also stated that it witnessed and weighed Vanpernis's credibility in court in reaching its guilty verdict. Given this record, we do not find that it "defies reasoning" for the factfinder to have found Vanpernis's law enforcement interview irrelevant or unremarkable. Contrary to Vanpernis's argument, the trial court did not "oversimplify" the evidence presented. The testimony of a single credible witness is all that is required to support a guilty verdict. *State v. Walker*, 2022-Ohio-1684, ¶ 50 (10th Dist.).

{¶25}  We overrule the first assignment of error.

### B. Dismissal of Petition without a Hearing

{¶26}   For his second assignment of error, Vanpernis contends that the trial court erred by denying his petition for postconviction relief without a hearing. For his argument, Vanpernis states that his first assignment of error raised this same error and that he is raising it as a second assignment of error as an alternative argument on the merits. Specifically, his brief states:

> The first Assignment of Error raises these issues in the context of the trial court's denial of the Petition without a hearing. To the extent this Court concludes the Decision properly denied the claims without a hearing, Vanpernis raises the issues in this Assignment of Error, as if the trial court denied relief on the merits. Accordingly, Vanpernis incorporates the factual and legal arguments presented above and asserts that, for all the reasons previously stated herein . . . he was deprived of effective assistance of counsel . . . .

{¶27}  To clarify, we interpret Vanpernis's first assignment of error to be that the trial court erred in denying his petition without a hearing because the trial court used the wrong standard of review. We rejected that argument and found that the trial court did not

wrongly dismiss his petition because it used the wrong standard of review. The trial court used the correct standard of review when it dismissed his petition without a hearing. We interpret his second assignment of error as contending that, assuming the trial court used the correct standard of review, the trial court nevertheless abused its discretion when it denied his petition without a hearing.

{¶28} "We review a decision to grant or deny a petition for postconviction relief, including the decision whether to afford the petitioner a hearing, under an abuse-of-discretion standard." *State v. Hatton,* 2022-Ohio-3991, ¶ 38.

> Generally, a trial court's decision to grant or to deny a R.C. 2953.21 postconviction petition should be upheld absent an abuse of discretion. "A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable." Also, reviewing courts should not overrule a trial court's findings if competent and credible evidence supports those findings. Additionally, a criminal defendant seeking to challenge a conviction through a petition for postconviction relief is not automatically entitled to an evidentiary hearing. Before granting an evidentiary hearing, a trial court must consider the petition, supporting affidavits, documentary evidence, files and records including the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript, to determine whether substantive grounds for relief exist. R.C. 2953.21(C). If a court concludes that petitioner has failed to set forth operative facts to establish substantive grounds for relief, no hearing is necessary.

(Citations omitted.) *State v. Rutherford*, 2019-Ohio-3827, ¶ 13 (4th Dist.). This standard is deferential. To find abuse of discretion, the decision must have been unreasonable, arbitrary, or unconscionable. An unreasonable decision is unsupported by a sound reasoning process. An arbitrary decision is made without regard to the facts or circumstances. An unconscionable decision "affronts the sense of justice, decency, or reasonableness." *State v. Kyles*, 2024-Ohio-998, ¶ 22 (12th Dist.).

**{¶29}** Vanpernis's petition was based entirely upon his belief that there was a reasonable probability that the successful suppression of his law enforcement interview would have affected the outcome of the proceedings (i.e. "the factfinder would have had a reasonable doubt respecting guilt"). *Bunch* at ¶ 26. He believes that without the law enforcement interview, there was a reasonable probability he would have been found not guilty.

**{¶30}** First, Vanpernis's petition is premised upon the strategic decision whether to use experts. "[T]he Supreme Court of Ohio has held that the decision whether to call a witness 'falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *Rutherford* at ¶ 20, quoting *State v. Treesh*, 2001-Ohio-4.

> Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence, whether pretrial, at trial, or both. There are, however, "countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Rare are the situations in which the "wide latitude counsel must have in making tactical decisions" will be limited to any one technique or approach. It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it. Here it would be well within the bounds of a reasonable judicial determination for the state court to conclude that defense counsel could follow a strategy that did not require the use of experts . . . .
>
> From the perspective of  . . .  defense counsel . . . there were any number of hypothetical experts—specialists in psychiatry, psychology, ballistics, fingerprints, tire treads, physiology, or numerous other disciplines and subdisciplines—whose insight might possibly have been useful. An attorney can avoid activities that appear "distractive from more important duties." Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.

(Citations omitted.) *Harrington v. Richter,* 562 U.S. 86, 106–07 (2011).

**{¶31}** The State, in its opposition to the petition argued that Vanpernis's trial counsel made the tactical decision to attack the reliability of Vanpernis's statements during the law enforcement interview by cross-examining law enforcement officials. The State argued that trial counsel, "clearly structured his cross examination of Sgt. Chaffins and Det. Sgt. Bollinger around the defense contention that the interview of the defendant was unfair and that therefore his admissions to touching the child should be disregarded. He addressed the issue of 'false confessions' directly with the investigating officers." Our review of trial counsel's cross examination of the interviewing officers shows that trial counsel raised extensive questions about the interview technique, the safeguards or lack thereof against a false confession, and Vanpernis's fatigue level and ADD. There is no cause to believe that trial counsel's strategy was unsuccessful or deficient given that the factfinder stated that it considered trial counsel's arguments "concerning the method and manner in which the custodial interview was conducted. The court reviewed the video interview keeping in mind the arguments and stated concerns of the defendant as well as the admissible and credible testimony of witnesses which was offered during the trial." As a result, the factfinder did not cite the law enforcement interview as persuasive evidence that supported its guilty verdicts.

**{¶32}** Second, Vanpernis's petition rests on several speculative statements. He speculates that the trial court would have admitted the testimony of the expert witnesses under Evid.R. 702. "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion." *Terry v. Caputo*, 2007-Ohio-5023, ¶ 16; *Herard v. State,* 390 So.3d 610, 622 (Fla. 2024) (trial court properly excluded expert who would "have testified about false confessions and related 'inherent

problems' with the 'Reid Technique,' a commonly used method of police interrogation . . . aimed at extracting confessions and evaluating suspect credibility"); *People v. Powell*, 37 N.Y.3d 476, 487 (N.Y. 2021) (trial court did not abuse discretion in excluding testimony of expert because defendant failed to meet his burden of establishing that expert's testimony in the area of false confessions was "readily acceptable in the scientific community").

**{¶33}** Vanpernis speculates that, had the experts' testimony been admitted, it would have established that Vanpernis's statements were coerced and should be suppressed. *Contra State v. Garrett*, 518 P.3d 1276, *6 (Kan.App. 2022) (reversing trial court's conclusion that the defendant's statements were involuntary and should have been suppressed because "a single deceptive interrogation tactic viewed in isolation does not establish coercion – it must be viewed alongside other factors to access the totality of the circumstances"); *United States v. Jacques*, 744 F.3d 804, 812 (1st Cir. 2014) (the exaggeration of evidence along with use of the Reid technique did not make a confession involuntary); *State v. Rejholec,* 398 Wis.2d 729, 750 (Wis.App. 2021) (the defendant "offers no authority concluding that the use of the Reid technique itself creates a coercive environment"); *Shelby v. State*, 986 N.E.2d 345, 365-66 (Ind.App. 2013) (use of the Reid technique did not render the confession involuntary).

**{¶34}** Finally, Vanpernis speculates that if his law enforcement interview had been suppressed or if the experts would have testified at trial, there was a reasonable probability that the trial judge would have found him not guilty. *See Rutherford* at 21 ("we find no evidence to indicate that a false confession expert would have, in fact, created a strong possibility of a different result at a bench trial); *State v. Tapke*, 2007-Ohio-5124, ¶

54 (1st Dist.) (expert witness "testified extensively about the Reid technique and the jury had an appropriate basis for not believing the confession. But it chose not to discredit it.").

**{¶35}** It is this last contention that the trial court analyzed because it is the second prong of an ineffective assistance of counsel claim – whether there was prejudice.[3] We agree with the trial court's conclusion that Vanpernis failed to establish a claim of ineffective assistance of counsel. Competent and credible evidence in the record supports that finding. The factfinder, when rendering the guilty verdicts, specifically identified which evidence it relied upon to support the guilty verdicts. The victim and Vanpernis's in court testimony, along with their general demeanor allowed the factfinder to assess credibility and determine that the victim's testimony was credible and Vanpernis's denials were not. This rendered Vanpernis's prior interview with law enforcement largely irrelevant, so much so that it was not remarked upon favorably by the factfinder in the verdict. "Generally, there is no prejudice where 'compelling evidence' remains to support the conviction assuming the suppression motion would have been granted." *State v. Jackson*, 2024-Ohio-1880, ¶ 23 (1st Dist.), appeal not allowed, 2024-Ohio-3313. The trial court did not abuse its discretion when it dismissed the petition for postconviction relief without a hearing.

**{¶36}** We overrule the second assignment of error.

---

[3] "The failure to make either the deficiency or prejudice showing defeats a claim of ineffective assistance of counsel. Thus, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' " *State v. Armor*, 2017-Ohio-396, ¶ 44 (10th Dist.), quoting *Strickland v. Washington,* 466 U.S. 668, 697 (1984).

## IV. CONCLUSION

{¶37}  We conclude that the trial court used the correct standard of review and did not abuse its discretion when it dismissed appellant's petition for postconviction relief without a hearing.  We overrule his assignments of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**